■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DWAYNE WATERS, Appellant. [639 NYS2d 353]

The record does not support defendant's claim that the prosecutor improperly elicited evidence of a photo identification of defendant made prior to the complainant's lineup identification of defendant.

Defendant's claim of improper admission of police testimony regarding his pretrial silence is unpreserved by specific objection (*People v Williams*, 165 AD2d 747, *lv denied* 76 NY2d 992). In any event, any error was harmless in light of the overwhelming evidence against defendant (*supra*). Concur—Sullivan, J. P., Ross and Williams, JJ.

Wallach, J., dissents in a memorandum as follows: After being given *Miranda* warnings at the police station, defendant gave an alibi (a court appearance at the time of the crime) which police investigators were able to debunk by determining that the appearance was the following day. Defendant then gave another alibi (picking up his girlfriend at a local college, where he had signed the log) which investigators again debunked when they found no such log entry.

The police detective was permitted to testify as to defendant's response when confronted with the disproof of each of these alibis. As to the first, the detective testified: "I then asked him why did he tell me something that was not true."

"Q And what was his answer, if anything, at that time?

"A He had no answer."

As to the second,

"Q When you found out that information, did you convey that to the defendant in the interview room?

"A Yes, I did.

"Q Did he respond in any way?

"A No."

So noteworthy was defendant's silence in the face of these disproofs that the prosecutor highlighted the second one in his summation:

"So when confronted with the fact his name did not appear in the logs, he did what you would expect a person caught in a lie to do. He sat there stone silent. * * *

"I submit it's not a coincidence that defendant was silent when confronted * * * with the falsehood of his second claim".

A defendant's failure to respond to a question at post-arrest interrogation cannot be used by the People as part of their direct case at trial, without thwarting his Constitutional privilege against self-incrimination (*People v Conyers*, 49 NY2d 174, *vacated on related grounds* 449 US 809, *adhered to on remand*

52 NY2d 454). Being under no duty to speak, "his silence should not be counted as giving assent to what he hears" (*People v Rutigliano*, 261 NY 103, 107). Implicit as a fundamental right in the *Miranda* warning is the assurance that a defendant's silence will not be used against him in a criminal trial (*Doyle v Ohio*, 426 US 610, 618).* Infringement of this right denies the defendant a fair trial (*People v Spinelli*, 214 AD2d 135).

Defendant was certainly under no obligation to offer an alibi. Permitting police testimony as to defendant's failure to offer an explanation had such an adverse effect on the latter's credibility that it cannot be viewed as harmless error (*People v Glover*, 163 AD2d 174, *lv denied* 76 NY2d 986). The only apparent purpose in informing a jury as to a defendant's exercise of his right to remain silent during police interrogation, even after he has initially answered questions, would be to permit those factfinders to infer consciousness of guilt, and that is impermissible (*People v Von Werne*, 41 NY2d 584, 588). Defendant should be entitled to a new trial.

---

* A notable exception is the permissible use of this information to impeach a defendant's testimony at trial (*Jenkins v Anderson*, 447 US 231; *People v Dawson*, 50 NY2d 311, 321).